IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2022 Session Heard at Austin Peay State University[1]

## THOMAS EDWARD CLARDY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
No. 2006-B-1065    Jennifer Smith, Judge
_____

### No. M2021-00566-CCA-R3-ECN
_____

For a 2005 shooting, a Davidson County jury convicted the Petitioner, Thomas Edward Clardy, of one count of first degree premeditated murder, two counts of attempted first degree premeditated murder, and three counts of reckless endangerment. The trial court imposed a life sentence. On December 8, 2020, the Petitioner filed a petition for a writ of error *coram nobis*, alleging newly discovered evidence in the form of an affidavit showing that he did not participate in the crime. The Petitioner acknowledged that he did not file the petition within the applicable statute of limitations but said he was entitled to an equitable tolling. The State agreed, and it asked the trial court for an equitable tolling and to hear the case on its merits. The *coram nobis* court, noting that it was not bound by the State's concession, dismissed the petition as untimely. After review, we conclude that the *coram nobis* court erred and that the Petitioner is entitled to an equitable tolling of the statute of limitations. As such, we reverse and remand to the *coram nobis* court for a hearing on the Petitioner's error *coram nobis* claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Jessica M. Van Dyke and Scott D. Gallisdorfer, Nashville, Tennessee, for the appellant, Thomas Edward Clardy.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Melissa Dix, Assistant District Attorney General, for the appellee, State of Tennessee.

_____

[1] Oral argument in this case was heard before students on the campus of Austin Peay State University, Clarksville, Tennessee.

# OPINION
## I. Facts

A Davidson County jury convicted the Petitioner of one count of first degree premeditated murder, two counts of attempted first degree premeditated murder, and three counts of reckless endangerment based upon the following evidence:

On July 29, 2005, a group of men fired shots at Kirk, Melissa, and Kent Clouatre at an automobile body shop in Madison, Tennessee. *State v. Thomas Edward Clardy*, No. M207-02729-CCA-R3-CD, 2009 WL 230245, at *1 (Tenn. Crim. App. Feb. 2, 2009), *perm. app. denied* (Tenn. June 15, 2009). One man's shots killed Kirk and wounded Melissa, Kirk's wife. *Id.* Another man's shot wounded Kent, Kirk's twin brother. *Id.* During the shooting, Kirk and Melissa's two children and another child were sitting in a car at the body shop. *Id.* The group of men retreated to their vehicle and fled the scene. *Id.* Police recovered several spent cartridge casings, live rounds, and projectile fragments from the scene but did not recover any weapons believed to belong to the assailants. *Id.* at *7-8.

The identification of the perpetrators was the central issue during the investigation and at trial. Kent testified about his identification of Petitioner and testified regarding his descriptions of the other men. At trial, Melissa did not remember giving descriptions of the suspects to the police, even when confronted with her statements to the police.

Kent said that a man whom he knew as "T" fired the shots that killed Kirk and struck Melissa. "T" was the only one of the three suspects that Kent had seen before. Kent identified Petitioner as "T" in a photographic lineup and at trial. Kent testified that "T" used a "[s]emiautomatic .40 caliber" pistol. At the beginning of the investigation, Melissa gave police officers the initial "D" when attempting to identify one of the perpetrators, but later the initial changed to a "T." Kent used the initial "T" every time that he was interviewed by Officer Cynthia Quirouette. Officer Quirouette maintained that "T" was the initial that came out through the rest of the investigation. However, she was not confident in the truthfulness of the witnesses during the investigation.

When describing the suspect who shot at him, Kent said, "He's a little bit heavy set man, little shorter. He had gold, I guess in his teeth, diamonds were set sideways, when he gritted [sic] at me." He described the weapon used by this man as a .38 caliber revolver. Kent described the third individual as a taller, thin guy. Melissa only described the third man. Her description

2

was limited to the fact that he was wearing a blue shirt. When describing this suspect's gun, Kent was unsure of the caliber, but stated that it was semiautomatic. However, neither Kent nor Melissa recounted this individual firing a weapon.

Melissa described the vehicle used by the suspects as a "'96 or '97 Sable or Taurus, blue with an oval back." Melissa also described the color as "blue or possibly green." According to Officer Quirouette, Kent described the vehicle as an "'84 to '86 four-door Buick Century or Celebrity, silver or gunmetal gray." Officer Quirouette admitted that the descriptions were "totally different." However, at trial, Kent disavowed any statement that the car was a Buick and asserted that the vehicle was a "forest green Ford Taurus." Royleesha Mason, Petitioner's wife at the time of the crime, owned a teal green 1996 Mercury Sable, which is very similar in appearance to a Ford Taurus. That car was frequently driven by Petitioner.

After hearing these identifications along with other evidence of the crime, a jury convicted Petitioner for the first-degree murder of Kirk in Count One, the attempted first-degree murder of Kent in Count Two, the attempted first-degree murder of Melissa in Count Three, and the reckless endangerment of the three children in Counts Four through Six. *Id.* at *1.

*Thomas Edward Clardy v. State*, No. M2017-01193-CCA-R3-PC, 2018 WL 5046032, at *1-2 (Tenn. Crim. App. June 20, 2018), *perm. app. denied* (Tenn. Apr. 12, 2019) (footnote omitted) (citing *State v. Thomas Edward Clardy*, No. M2007-02729-CCA-R3-CD, at *1-2 (Tenn. Crim. App. Feb. 2, 2009), *perm. app. denied* (Tenn. June 15, 2009)). The trial court imposed an effective sentence of life in prison.

The Petitioner unsuccessfully sought post-conviction relief based upon ineffective assistance of counsel, actual innocence, and photographs of an alternative suspect. *Id.* at *6-8. The post-conviction court denied him relief. On appeal, we concluded that the post-conviction court had not erred. We held that counsel was not ineffective. We noted that the Petitioner claimed his actual innocence, as he had an alibi for the time of the crime and because there was a viable alternative suspect, Dantwan Collier. *Id.* The Petitioner proved that a .40 caliber cartridge casing found at the crime scene in this case matched a weapon used in a subsequent shooting by Mr. Collier. We stated that, while exculpatory, this evidence did not prove the Petitioner's innocence by clear and convincing evidence, as there were three individuals who participated in the shooting in this case and the Petitioner could have possessed the firearm before Mr. Collier. About the photograph of the alternative suspect, we held that the post-conviction court erred by not admitting it at the post-conviction hearing to preserve the record but that any error was harmless. We too denied the Petitioner relief.

3

On December 8, 2020, the Petitioner filed a petition for writ of error *coram nobis*, alleging newly discovered evidence. In support, he reasserted many of the claims presented in his petition for post-conviction relief. Additionally, he attached an affidavit from Mr. Collier swearing that he did not know the Petitioner and had never received any property of any kind from the Petitioner. The Petitioner acknowledged that he had filed his petition for a writ of error *coram nobis* beyond the applicable statute of limitations, but he asserted that he was entitled to an equitable tolling of that statute of limitations period. The State agreed and asked the court to consider the issue on its merits.

The *coram nobis* court issued an order setting a hearing on the issue of equitable tolling. In the order, the court stated "the Court is not bound by the State's position [agreeing with the Petitioner]; rather, it is obligated to independently analyze the issue, particularly since it bears on the Court's authority to review the case at all." At the hearing, the parties issued a joint stipulation of facts.

In the joint stipulation, the parties stated that the Petitioner, whose defense was based on mistaken identification, had been convicted by a jury of six charges, including first degree murder, stemming from the July 29, 2005 shooting and sentenced to life. During the trial, Officer Fleak testified that several types of spent shell casings, all of which had undergone ballistics testing, were found at the crime scene. The only ballistics match was to a 9mm gun found at the crime scene, and there was testimony that gun belonged to the murdered victim. The Petitioner's fingerprints were not found on any items.

The stipulation recounted that this court had affirmed the Petitioner's conviction and that his Rule 11 application to the Tennessee Supreme Court had been denied. The Petitioner timely filed a *pro se* petition for post-conviction relief. Counsel Van Dyke was appointed to represent the Petitioner in Fall 2014, and she began investigating underlying facts and moving for evidence testing. In January 2016, in response to her efforts, new ballistics testing of the shell casings found at the crime scene revealed that two .40 caliber Smith & Wesson cartridge cases found at the crime scene were discharged from a gun later recovered in connection with a June 5, 2006 incident documented in MNPD Complaint No. 2006-310448. This incident involved an undercover drug purchase that led to the arrest of three people: Dantwan Collier, Joe Vaughn, and Kenneth Offutt. During the incident, Mr. Collier dropped the gun that was a ballistic match to the gun tied to the Kirk and Kent Clouatre shooting. Mr. Collier was charged with possessing that gun and cocaine, both charges to which he pleaded guilty.

Upon learning of this, Counsel Van Dyke identified Mr. Collier as an alternative suspect for the Clouatre shooting and began investigating Mr. Collier's background, criminal history, and social media activity. Mr. Collier had pending felony charges and Counsel Van Dyke could not directly speak with him.

4

The January 2016 ballistics testing also indicated that two 9mm cartridge cases found at the scene of the Clouatre shooting were fired from a firearm used in connection with the January 5, 2006 murder of Lashelle Stevenson, MNPD Complaint No. 06-00763A. Mr. Collier's cousin, Thomas Collier, pleaded guilty to the murder of Ms. Stevenson.

Counsel Van Dyke presented this evidence as part of a hearing on the Petitioner's petition for post-conviction relief held on September 23, 2016. She contended that the Petitioner's trial counsel was ineffective, in part, because he failed to investigate the cartridge cases and identify Mr. Collier as an alternative suspect. The post-conviction court denied his petition, this court affirmed the denial, and the Tennessee Supreme Court denied review.

The stipulated facts went on to note that in February 2019, Counsel Van Dyke submitted a petition on the Petitioner's behalf to the Davidson County District Attorney's Conviction Review Unit and met with a representative from that unit. As of the date of the stipulation, the review was ongoing.

In July 2019, a *pro bono* investigator for the Petitioner began investigating Mr. Collier. The investigator determined that Mr. Collier's charges were resolved on July 27, 2018, and Mr. Collier agreed to meet with the investigator. An investigator met with Mr. Collier in December 2019. Mr. Collier executed an affidavit saying that he did not know the Petitioner, had never met him, and had never received any property from him.

In the stipulation of facts, the parties asserted that this court's opinion denying the Petitioner's petition for post-conviction relief had held that the Petitioner had not adequately shown his innocence. We based this holding in part on the fact that the new ballistics evidence, while exculpatory, did not rule out the possibility that the Petitioner and Mr. Collier were accomplices or that the Petitioner had possessed one of the guns before Mr. Collier. The parties further asserted that, in light of Mr. Collier's affidavit, which contradicted this court's opinion on both accounts, the Petitioner was entitled to relief. Further, the parties noted that the Petitioner had filed his petition for a writ of error *coram nobis* within one year from obtaining the affidavit.

The stipulation by the parties noted that the State agreed that the Petitioner was entitled to an equitable tolling of the applicable statute of limitations. The stipulation was signed by both parties.

After noting the stipulation, the Petitioner's attorney stated that she believed that the Petitioner had provided sufficient proof that the Petitioner met both requirements for an equitable tolling of the applicable statute of limitations. She stated that this was, obviously, a later-arising ground because the basis for the discovery evidence came from ballistics testing that inculpated two other men, neither of whom had any connection with the Petitioner. The second prong of an equitable tolling analysis requires that the Petitioner

5

show that he should have a reasonable opportunity to present the evidence to the court. The Petitioner contended that he had not had such opportunity because, while the ballistics evidence was presented at the post-conviction hearing, this court held that the Petitioner and Mr. Collier could have known each other. This new affidavit showed that they did not know each other, and that the Petitioner had not given the murder weapon to Mr. Collier. This evidence, he posited, was proof of actual innocence.

The State informed the *coram nobis* court that it believed that the Petitioner had met the standard for equitable tolling and that the Petitioner should be able to proceed with his *coram nobis* petition. The State further asserted that its "governmental interest" was in line with the Petitioner's interest in that applying equitable tolling would allow the State to exercise diligence in further investigating these claims.

The trial court repeatedly asked if the State thought the Petitioner was "actually innocent," contended that such a finding was necessary to apply an equitable tolling of the statute of limitations. The State informed the court that it did not believe that "actual innocence" was the appropriate standard and that, based upon the affidavit, the State believed that further investigation was necessary to determine why the two weapons used in the Clouatre shooting were found in the possession of Mr. Dantwan Collier and Mr. Thomas Collier, respectively. The affidavit, it said, ruled out that the two men were acting in concert with the Petitioner.

The *coram nobis* court took the matter under advisement and then ultimately denied the Petitioner's writ on error *coram nobis* as being untimely filed. The court found:

> After considering the petition and attachments, the record of proceedings, and argument of counsel, the Court rejects the positions of both parties. Petitioner has previously presented evidence that the weapons used in this case were likely also used to commit other crimes many months after the murder here. In an earlier post-conviction proceeding, a forensic firearm examiner analyzed cartridge casing recovered from the crime scene. That examination resulted in a determination that the casings were a match to weapons used in later shootings.
>
> . . . .
>
> Based on that evidence, Petitioner argued that ballistics testing had established Dantwan Collier as an alternative suspect and supported a finding of actual innocence. But the trial court and the Court of Criminal Appeals rejected that claim.
>
> The ballistic testing revealed that a .40 caliber cartridge casing found at the crime scene matched a weapon used in a subsequent shooting by

6

Dantwan Collier and the two 9mm cartridge casings matched a weapon used in a subsequent shooing by Thomas Collier. This evidence, while certainly exculpatory, does not prove Petitioner's innocence by clear and convincing evidence. *There were three individuals who participated in the shooting in this case. This newly discovered evidence suggests that Dantwan Collier and/or Thomas Collier may have been involved. However, it does not mean that Petitioner was not one of the three men. Furthermore, it is possible that Petitioner possessed one of the firearms before Dantwan or Thomas Collier.* So, even though the evidence is exculpatory, it does not prove Petitioner's innocence by clear and convincing evidence.

*Clardy*, 2018 WL 5046032, at *7 (emphasis added).

Petitioner has now presented to the Court an affidavit from Dantwan Collier dated December 10, 2019, which states, in pertinent part:

\*                    \*                    \*

2. I do not know [the Petitioner]. I do not recall ever meeting anyone by that name.

3. I have never received any property of any kind from [the Petitioner].

Petitioner argues that this Affidavit establishes Petitioner's innocence because it effectively dispels any possibility that Dantwan Collier was Petitioner's accomplice in this case. The Court disagrees for the reasons stated by the Court of Criminal Appeals as set forth above and by the predecessor Judge in this case. Even taking the new affidavit at face value, it simply does not rule out, or even seriously undermine, the *Petitioner's* involvement in the crime here. Moreover, Petitioner's counsel candidly acknowledged at the April 23 hearing that guns "do get passed around on the street." The significance of the ballistics evidence was previously considered in Petitioner's post-conviction proceeding. Error *coram nobis* is not a "catch-all" remedy that enables convicted persons to 'litigate and relitigate the propriety of their convictions *ad infinitum.*'"

The December 19, 2019 affidavit of Dantwan Collier does not amount to "new evidence of actual innocence" discovered after the expiration of the limitations period. *Nunley*, 552 S.W.3d at 828. Petitioner has thus failed to demonstrate that equitable tolling of the statute of limitations is appropriate.[4]

> FN4 Despite its full-throated agreement with the Petitioner that equitable tolling is warranted, the State declined to take any position at the hearing before this Court on whether the

Petitioner had presented "new evidence of actual innocence," a requirement for tolling under *Nunley*, stating instead that it needed additional time for investigation. But the State has known since the post-conviction proceeding that ballistics analysis tied the weapons used in this case to later shootings perpetrated by Dantwan and Thomas Collier. It has known since the post-conviction proceeding that the Petitioner viewed Dantwan Collier as an alternate suspect, and it specifically defended against Petitioner's claim of actual innocence in that proceeding.

(some footnotes and some citations omitted).

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the *coram nobis* court applied the wrong standard when summarily dismissing his petition. The Petitioner asserts that the *coram nobis* court failed to apply the *Nunley* equitable tolling criteria and focused instead on the merits of his claim. The State pivots from its previous agreement with the Petitioner and now posits that the petition was untimely filed and that the Petitioner is not entitled to equitable tolling. The State contends that the *coram nobis* court "implicitly considered" the equitable tolling factors and properly considered the merits of his claim.

A writ of error *coram nobis* is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). *Coram nobis* relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error *coram nobis* will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2018); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (describing standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different" (citation omitted)). The grounds for seeking a petition for writ of error *coram*

8

*nobis* are not limited to specific categories but may be based upon any "newly discovered evidence relating to matters which were litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time.  T.C.A. § 40-36-105(b).

The writ of error *coram nobis* is subject to a one-year statute of limitations which is measured from the date the judgment becomes final.  *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999)); *see also* T.C.A. § 27-7-103.  Compliance with the one-year statute of limitations is an "essential element of a *coram nobis* claim."  *Nunley*, 552 S.W.3d at 828 (quoting *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010)).  The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion.  *Payne v. State*, 493 S.W.3d 478, 484 (Tenn. 2016); *Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999).  A petition for a writ of error *coram nobis* may be summarily dismissed if it fails to show on its face that it has been timely filed because the timely filing requirement in Code section 27-7-103 is an essential element of a *coram nobis* claim.  *Nunley*, 552 S.W.3d at 828.

"[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner."  *Buford*, 845 S.W.2d 204, 208 (Tenn. 1992); *see also Workman*, 41 S.W.3d 100, 102 (Tenn. 2001) (applying the holding in *Buford*, a post-conviction proceeding, to error *coram nobis* proceedings).  The one-year statute of limitations may be tolled if a petition for a writ of error *coram nobis* seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period.  *Nunley*, at 828-29.  "In keeping with the extraordinary nature of the writ," a petitioner must set forth facts demonstrating that the claim arose after the statute of limitations would have started to run and that a strict application of the limitations requirement would deny him a reasonable opportunity to present his claim.  *Id*. at 829.  The *coram nobis* court possesses the discretion to summarily dismiss a petition if it fails to show on its face that it is timely or the averments merit due process tolling.  *Id*.

Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which is reviewed *de novo* with no presumption of correctness.  *Id*. at 830.  "The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations."  *Id*. at 831 (the petitioner's other claims pretermitted by his untimely petition and failure to establish due process tolling).

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the

prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims . . . .

*Id*. at 829 (quoting *Harris*, 301 S.W.3d at 153 (Koch, J., concurring)). In addition to the strict pleading guidelines requiring a petitioner to demonstrate that the grounds are later arising and that application of the limitations period would offend due process, the Tennessee Supreme Court has also concluded that "'[a] prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.'" *Id*. (quoting *Harris*, 301 S.W.3d at 153 (Koch, J., concurring)).

*Coram nobis* relief is available only when a court determines that the new evidence may have led to a different result, T.C.A. § 40-26-105(b), "or in other words, 'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *Id*. at 816 (quoting *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007)). "[A] petition for a writ of error *coram nobis* need not show that the result of the proceeding would have been different had the evidence been available at trial—the petition need only show that the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment." *Id*. at 818. Generally, a petitioner cannot premise relief on evidence "which is merely cumulative or 'serves no other purpose than to contradict or impeach.'" *Wlodarz v. State*, 361 S.W.3d 490, 499 (Tenn. 2012) (quoting *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995)), abrogated on other grounds by *Frazier v. State*, 495 S.W.3d 246 (Tenn. 2016). When impeachment or cumulative evidence does not establish grounds for showing that it may have resulted in a different judgment, it cannot serve as the basis of relief. *Hart*, 911 S.W.2d at 375; *cf. Vasques*, 221 S.W.3d at 528 (concluding that the nature of newly discovered evidence as impeachment evidence is relevant to but not controlling of the determination of whether the evidence may have led to a different result).

In this case, the parties agree that the Petitioner filed his petition for a writ of error *coram nobis* beyond the applicable statute of limitations. We must turn to decide, *de novo*, whether the due process considerations require a tolling of the statute of limitations. The one-year statute of limitations may be tolled if a petition for a writ of error *coram nobis* seeks relief based upon new evidence of actual innocence discovered after the expiration of the limitations period. *Id*. at 828-29. The ballistics evidence analysis obtained by the Petitioner's attorney showed that the shell casings found at the scene matched two weapons, one of which was possessed by Dantwan Collier and the other possessed by Thomas Collier months after these offenses and used in different crimes. Dantwan Collier offered an affidavit that he did not know the Petitioner nor did he receive any property from him.

As previously stated, to be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims.

Based on our *de novo* review, we conclude that the ballistics evidence and affidavit were discovered after the expiration of the limitations period and are, therefore later arising. We further conclude that strict application of the statute of limitations would effectively deny the Petitioner a reasonable opportunity to present his claims. As the State claimed before the *coram nobis* court below, an adequate investigation into whether the Colliers were present at the Clouatre shooting and whether the Petitioner was with them is important to serve the ends of justice. The State's interest in preventing stale litigation is outweighed by the Petitioner's interest in presenting his meaningful claim.

Accordingly, we conclude that the Petitioner is entitled to an equitable tolling of the statute of limitations. This entitles him to a hearing on his claims contained in his petition for a writ of error *coram nobis*. At that hearing, the *coram nobis* court will consider all the evidence and determine the merits of his petition.

### III. Conclusion

Based on the foregoing reasoning and authorities, we reverse the judgment of the *coram nobis* court and remand the case for a hearing on the Petitioner's *coram nobis* petition.

_____
ROBERT W. WEDEMEYER, JUDGE

11